IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BRANDON MEADOWS                                                                                    PLAINTIFF

vs.                                           CIVIL NO. 06-1009

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                                       DEFENDANT

## MEMORANDUM OPINION

Brandon Meadows (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income ("SSI") under Title XVI of the Act.

**Background:**

The application for SSI now before this court was protectively filed on September 9, 2003, alleging an onset date of June 9, 2003, due to Erb's palsy,[1] asthma, angioedema,[2] and allergies. (Tr.

---

[1] Erb's Palsy is a nerve injury that effects the movement of a child's shoulder, arm, and hand. *See What is Erb's Palsy*, at www.erbspalsyonline.com. The injury usually happens during childbirth when a baby's shoulder is stuck in the birth canal and too much force is applied to the baby's head. *Id*. Pulling on the baby's head stretches and injures the nerves between the shoulder and the neck, which provide movement to the arm, hand, and fingers. *Id*. This collection of nerve fibers is called the "brachial plexus," or "Erb's Point" (hence the name Erb's Palsy, or Brachial Plexus Palsy). *Id*.

[2] Angioedema is a condition that involves vascular leakage beneath the dermis and subcutis layers of the skin. *See* Nedra Dodds, M.D., *Angioedema*, at www.emedicine.com. The body responds by releasing histamine, serotonin, and kinins, which cause the arterioles to dilate and induce a brief episode of vascular leakage in the venules, where the junction between the endothelial cells appears looser than in the capillaries and arterioles. *Id*. This results in well-demarcated, localized, nonpitting edema. *Id*. Complications of this disorder range from dysphonia or dysphagia to respiratory distress, complete airway obstruction, and death. *Id*.

88). An administrative hearing was held on April 19, 2005. (Tr. 272-300). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on April 19, 2005, plaintiff was nineteen years old and possessed a high school education and one year of college credit. (Tr. 277). However, at the time his application for benefits was filed, plaintiff was only seventeen. (Tr. 276). The record reveals that he had no relevant past relevant work experience ("PRW"). (Tr. 286).

On August 20, 2005, the Administrative Law Judge ("ALJ"), issued a written opinion finding that plaintiff's Erb's palsy with brachioplexopathy of the right arm, right and left Osgood-Schlatter disease of the knees, chronic asthma with chronic bronchitis, sinusitis and allergic rhinitis, and angioedema were severe impairments, but did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 24). In addition, the ALJ also determined that plaintiff's condition prior to attainment of age eighteen did not functionally equal, singly or in combination, a listed impairment because plaintiff did not demonstrate an "extreme" limitation in any one domain or a "marked" limitation in two domains of functioning as is required for a finding of disability under the child disability standard. (Tr. 25). Then, utilizing the adult disability standard, the ALJ concluded that plaintiff maintained the residual functional capacity ("RFC") to perform a wide range of light work activity, limited only by his inability to reach overhead with his right arm, perform assembly-type work, work outdoors, and be exposed to temperature extremes, chemicals, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr.

25-26). With the assistance of a vocational expert ("VE"), the ALJ determined that plaintiff could still perform the positions of information clerk, interviewer, and general office clerk. (Tr. 23).

On November 30, 2005, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 13, 14).

**Applicable Law:**

The issue before this court is whether the Commissioner's decision is supported by substantial record evidence. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id*. *See also Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). "However, our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision.' Nevertheless, as long as there is substantial evidence in the record to support the Commissioner's decision, we will not reverse it simply because substantial evidence exists in the record that would have supported a different outcome, *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995), or 'because we would have decided the case differently.'" *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001)(citations omitted).

AO72A
(Rev. 8/82)

As a preliminary matter, we note that plaintiff turned eighteen while his application was pending. We will first discuss the ALJ's conclusion that plaintiff did not qualify for SSI benefits under the child standard. We will then discuss the ALJ's determination that plaintiff was not disabled as of September 9, 2003,[3] through the date of his decision under the adult SSI standard.

A determination that a child is disabled requires a three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. See 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a medically determinable impairment(s) that is severe. *See* 20 C.F.R. § 416.924(c)). A severe impairment is an impairment that is more than a slight abnormality or a combination of slight abnormalities that causes more than a minimal functional limitation. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). *See* 20 C.F.R. § 416. 924(d). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d)(1).

---

[3]SSI benefits are not payable for the period prior to the application; therefore, the relevant time period runs from the date of the application. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. §§ 416.330, 416.335. Consequently, the relevant period is from September 3, 2002, plaintiff's protective filing date for SSI, through the date of the Commissioner's final decision denying disability. Evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition; however, such evidence cannot serve as the only support for disability. *See Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).

AO72A
(Rev. 8/82)

Under the current law, to determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's ability to function in his or her activities in terms of six domains. These domains are broad areas of functioning intended to capture all of what a child can or cannot do. The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. 20 C.F.R. § 416.924a(b)(1)(I)-(vi).

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to a disability in the Listings. *See* 20 C.F.R. § 416.926a(d). A marked limitation is an impairment that "interferes seriously with your ability to independently initiate, sustain, or complete activities." It also means "more than moderate" but "less than extreme." *See* 20 C.F.R. § 416.926a(e)(2)(I). An extreme limitation exists when the impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. "Extreme" limitation also means a limitation that is more than marked, and is the rating given to the worst limitations. *See* 20 C.F.R. § 416.926a(c)(3)(ii).

In adult social security disability cases, a five-part analysis is utilized. *See e.g., Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Applying this analysis, the ALJ must determine, sequentially, the following: 1) whether the claimant is employed; 2) whether the claimant has a severe impairment; 3) whether the impairment meets a listed impairment; 4) whether the impairment prevents the claimant from doing past work; and 5) whether the impairment prevents the claimant from doing any other work. *Id.*; *see also* 20 C.F.R. § 404.1520.

AO72A
(Rev. 8/82)

If the claimant fails at any step, the ALJ need not continue. "The claimant carries the burden of establishing that [he] is unable to perform [his] past relevant work, i.e., through step four, at which time the burden shifts to the Commissioner to establish that [he] maintains the residual functional capacity to perform a significant number of jobs within the national economy." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) (citing *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).

**Discussion:**

As previously indicated, we will first conduct the child assessment. Because the ALJ concluded, and we agree, that plaintiff's combination of impairments did not meet or one of the listed impairment, we will address each of the ALJ's domain determinations. With regard to acquiring and using information, the ALJ concluded that plaintiff had no limitations. (Tr. 16). As the ALJ pointed out, plaintiff was an honor student in high school with a 3.5 grade point average. (Tr. 278). He had also completed one year of college with a 3.0 grade point average and was studying to be a physical therapist. (Tr. 278, 280).

In fact, on August 26, 2003, plaintiff's school counselor completed a form indicating that plaintiff was a good student, was cooperative in class, had no discipline problems, no problems with social functioning, and attended classes regularly with very few absences. (Tr. 99, 103). As such, we find substantial evidence to support the ALJ's finding of no limitations in this area.

With regard to attending and completing tasks, the ALJ also found plaintiff had no limitations in this area of functioning. (Tr. 17). The ALJ acknowledged plaintiff's ability to play football and maintain an excellent academic record. Plaintiff's own testimony reveals that he played the position

6

of nose guard and "made everything but All-State." (Tr. 278). Clearly, this is not the type of record one would expect to see in a student with attention and/or distractibility issues.

In the next domain of functioning, interacting and relating with others, the ALJ concluded that plaintiff had no limitations. (Tr. 17). According to the report of his school counselor, plaintiff had no problems with social functioning and had demonstrated no behavioral or emotional problems. (Tr. 99, 103). In addition, plaintiff was a member of the football team and reported no problems getting along with his fellow team members. (Tr. 278).

With regard to moving about and manipulating objects, the ALJ determined that plaintiff had less than marked limitations. (Tr. 17). In so doing, the ALJ noted plaintiff's diagnosis of Erb's palsy and his limitations with regard to lifting his right arm above shoulder level. However, he noted, as do we, plaintiff's history of playing the position of nose guard for his high school football team, as well as his many honors for his sporting abilities. (Tr. 278-280). It is clear from plaintiff's testimony that his football training was quite strenuous and required the ability to move and manipulate the football.

Plaintiff also reported an ability to play video games. (Tr. 68). In addition, he worked one summer for Arkansas Community College as a maintenance man. (Tr. 284-285). His job involved cutting grass with a push mower, trimming and edging, and moving things in and out of buildings. (Tr. 285). These are just further examples of his ability to move and manipulate objects, despite the limitations regarding his right shoulder. (Tr. 68). Therefore, because plaintiff's Erb's palsy has not

AO72A
(Rev. 8/82)

prevented him from performing these activities, we find that substantial evidence supports the ALJ's finding of less than marked limitations in this area.

In the domain of caring for oneself, the ALJ found that plaintiff had no limitations. (Tr. 18). We note that plaintiff's mother indicated that plaintiff could take care of his personal hygiene, cook a meal, get to school on time, study and do homework, take needed medication, and complete homework. (Tr. 82-85). Further, on his supplemental interview outline, plaintiff indicated an ability to care for his personal hygiene, do the dishes, change the sheets, iron, and prepare sandwiches. (Tr. 67-68). Further, in December 2002, plaintiff reported no limitations in his activities of daily living. (Tr. 115). In fact, Dr. Hollister noted that he could bring his arm to the back of his head for personal hygiene purposes. (Tr. 115). As we can find no reports of limitations in this domain of functioning, the ALJ's determination will stand.

In the sixth and final domain, health and physical well-being, the ALJ concluded that plaintiff had less that marked limitations. (Tr. 18). He noted that a marked limitation in this area would be found if the child was frequently ill because of their impairment. However, the term frequently ill meant that they experienced an exacerbation of symptoms on an average of three times per year, or once every four months, each lasting two weeks or more. A marked limitation can also be found if a child has symptoms that occur more often than three times per year or once every four months but do not last two weeks at a time, if the overall effect (based on the length of the episode or its frequency) is equivalent in severity.

8

The ALJ pointed out that plaintiff had undergone physical therapy and an exercise program to strength his right upper extremity. In spite of this, he remained unable to lift his right arm above his head. However, as noted above, plaintiff had been extremely active, despite his limitations. (Tr. 278-280). He was a successful high school football nose guard and remained able to lift weights. Plaintiff was also able to perform the position of maintenance worker for one summer during college. (Tr. 285).

While the ALJ did acknowledge plaintiff's periodic medical treatment and medication for asthma, chronic bronchitis, and angioedema, he noted that plaintiff's condition had responded well to medication and did not appear to more than minimally interfere with his daily activities. It is clear from the records that plaintiff sought treatment on multiple occasions for these impairments. The records indicate that he received emergency treatment, namely prescription medications and injection, and was released home without extensive hospitalization. Plaintiff also took medication on a daily basis to help control his asthma. When a condition can be controlled by treatment or medication, it cannot be considered disabling. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). As such, we find substantial evidence to support the ALJ's determination that plaintiff had less than marked limitations in this domain of functioning.

Having completed that child disability analysis, we will now assess plaintiff's impairments using the adult disability standard. We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective

9

AO72A
(Rev. 8/82)

complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

At the onset, we note that the evidence does indicate that plaintiff has been diagnosed with Erb's palsy, Osgood-Schlatter disease, asthma, and angioedema. However, progress notes regarding plaintiff's Erb's palsy and Osgood-Schlatter disease indicate that, despite these impairments, he remained capable of playing high school football, working as a summer maintenance worker, working part-time as a desk receptionist at the resident hall, driving a four-wheeler, and playing video games. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that plaintiff's ability to perform part-time work was indicative of his ability to perform substantial gainful activity).

Likewise, while the evidence concerning plaintiff's asthma and angioedema does indicate that he experienced multiple exacerbations of these ailments, each time these conditions were brought under control via the use of medication. (Tr. 264, 388). *See Roth*, 45 F.3d at 282. In fact, plaintiff even testified that he was able to keep his asthma under control via nebulizer treatments and inhalers.

10

(Tr. 288, 292). Additionally, plaintiff's asthma and angioedema were treated conservatively and did not require extensive hospitalization. *See Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998) (holding that fact that claimant had not undergone surgery and relied on conservative treatment weighed against his subjective complaints); *Robinson v. Sullivan,* 956 F.2d 836, 840 (8th Cir. 1992) (noting the fact that all doctors who treated plaintiff prescribed conservative treatment did not support plaintiff's contention of disability). This, in spite of the fact that plaintiff played football throughout high school and worked as a summer maintenance worker cutting grass with a push mower, trimming and edging, and moving things in and out of buildings. (Tr. 285). As such, we cannot say that his impairments were as severe as alleged.

Plaintiff's own reports and the reports of his mother concerning his activities of daily living also contradict his claim of disability. On a child function report, plaintiff's mother indicated that he could read and understand sentences, read and understand stories, spell words of more than four letters, tell time, add and subtract numbers over ten, multiply and divide numbers over ten, understand money, and understand, carry out, and remember simple instructions. (Tr. 82). She also reported that he was able to walk, run, drive a car, ride a bike, throw a ball, play sports (played football at school), work video controls, make new friends, take care of his personal hygiene, cook a meal, get to school on time, study and do homework, take needed medication, use public transportation, and complete homework. (Tr. 82-85). Further, on his supplemental interview outline, plaintiff reported an ability to care for his personal hygiene, do the dishes, change the sheets, iron, take out the trash, wash the car, shop for clothing, go to the post office, prepare sandwiches, count

11

change, drive, watch TV, listen to the radio, and play video games. (Tr. 67-68). In addition, at the administrative hearing, plaintiff indicated that he was able to play in the position of nose guard for his high school football team, work as a summer maintenance worker, drive a car, and drive a four-wheeler. (Tr. 278, 284-285). *See McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003)(holding that plaintiff was able to perform many of the activities associated with daily life); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). These activities are inconsistent with claims of disabling pain and impairment.

Therefore, although it is clear that plaintiff suffers from some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

12

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a wide range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, plaintiff's subjective complaints, and his medical records. On September 29, 2003, Dr. Stephen Whaley, a non-examining, consultative physician, completed a childhood disability evaluation form. (Tr. 164-169). After reviewing plaintiff's medical records, he concluded that plaintiff had no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and

13

AO72A
(Rev. 8/82)

caring for himself. (Tr. 166-167). He found less than marked limitations in the area of health and physical well-being, noting three episodes of significant asthma over the past year requiring parenteral intervention or steroid burst treatment. (Tr. 167).

On October 1, 2003, Dr. Whaley completed a physical RFC assessment. (Tr. 247-257). After reviewing plaintiff's medical records, he noted no exertional, postural, manipulative, visual, or communicative limitations. However. Dr. Whaley did note that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 251). This assessment was affirmed by Dr. Ronald Crow on January 26, 2004. (Tr. 254).

As discussed above, the medical evidence does not indicate that plaintiff was suffering from any limitations that would prevent him from performing light work. In fact, in December 2002, plaintiff reported no limitations in his activities of daily living. (Tr. 115). Further, we note that plaintiff was capable of playing football and performing the vigorous training standards required of members of the football team. (Tr. 278, 283-284). I addition, he was able to work as a summer maintenance worker and a part-time desk receptionist at his residence hall. As such, we believe the record contains substantial evidence to support the ALJ's conclusion that plaintiff could perform a wide range of light work activity, limited only by his inability to reach overhead with his right arm, perform assembly-type work, work outdoors, and be exposed to temperature extremes, chemicals, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr. 25-26).

We also find that substantial evidence supports the ALJ's finding that plaintiff could perform work as an information clerk, interviewer, and general office clerk. (Tr. 23). The ALJ presented the

14

VE with a hypothetical example of an individual of plaintiff's age and education who had medical implications limited to asthma, angioedema, and Erb's palsy of the right arm but could still perform light work that did not involve reaching and handling with his right arm, performing assembly-type work, and working around temperature extremes, heavy chemicals, heavy dust, heavy fumes, and heavy humidity. (Tr. 299). The ALJ stated that plaintiff had obtained an excellent academic record, was attending college, and was able to work part-time. (Tr. 298-299). In response, the VE indicated that such a person could perform the positions of information clerk, interviewer, and general office clerk. (Tr. 299). As this hypothetical question took into consideration the limitations the ALJ concluded were actually caused by plaintiff's impairments, and which are supported by substantial evidence, the VE's testimony provided substantial evidence to support the ALJ's finding that plaintiff could perform these positions. *See Depover v. Barnhart,* 349 F.3d 563, 568 (8th Cir. 2003) (holding that a VE's response to a properly posed hypothetical question supplied substantial evidence to support ALJ's finding that plaintiff could return to PRW).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this <u>04th</u> day of October 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)